**Jack BAROFSKY, Appellant,**

v.

**GENERAL ELECTRIC CORPORATION, Appellee.**

**No. 21415.**

United States Court of Appeals Ninth Circuit.

May 20, 1968.

Rehearing Denied June 28, 1968.

William H. Pavitt (argued), of Smyth, Roston & Pavitt, Los Angeles, Cal., for appellant.

Ford Harris, Jr. (argued), of Harris, Keich, Russell & Kern, Los Angeles, Cal., for appellee.

Before HAMLEY, and ELY, Circuit Judges, and POWELL, District Judge.

HAMLEY, Circuit Judge:

This suit involves the validity and infringement of U. S. Design Patent No. D–176,492, issued to Jack Barofsky on January 3, 1956. Barofsky commenced the action against General Electric Corporation charging infringement of his patent and seeking damages and other relief. General Electric answered, denying infringement and asking for a declaratory judgment that the Barofsky patent is invalid.

After certain discovery activity, General Electric moved for summary judgment in its favor on the alternative grounds that the Barofsky patent is invalid and that it has not been infringed by defendant. Plaintiff opposed the motion for summary judgment and both parties filed additional evidentiary materials. The district court granted summary judgment for General Electric on the ground that the Barofsky patent is invalid, and did not reach the infringement issue. Barofsky appeals.

Barofsky's design patent is entitled, "Television Cabinet or Similar Article." It depicts a rectangular box-like central cabinet in the upper part of which is provided a smaller rectangular space which would presumably house a television screen or some other electronic entertainment component. Barofsky claims no novelty for his design of the central cabinet.

The dominant features claimed for his design relate to the doors attached by hinges to the sides of the center cabinet. These are shallow rectangular boxes approximately one-half the width and one-third the depth of the cabinet, having a plain and apparently solid frame and a front and rear surface of a mesh-like material. These frames have a narrow molding which serves to retain the cloth or other fabric on the doors, and its width is not material to Barofsky's patent. Each of the doors is provided with a pull knob.

The doors are provided, along their outer edges, with a bevel of about 45°, which is plainly apparent when the doors are closed. The beveled edges make it possible to open the doors so that they extend back from the front face of the central cabinet at an obtuse angle of about 220°. Without these bevels the maximum angle of opening, as compared to the face of the cabinet, would be 180°, for at that point the hinged side of the door would be flush with the side of the

cabinet. When both doors are closed they completely cover the face of the cabinet.

While the patent in suit does not specifically state that the doors are intended to be hollow, this is indicated by the relative thickness of the doors as compared to the depth of the cabinet, and by the mesh-like appearance and apparently sound-permeable quality of the front and rear surfaces of the doors.

In order for a design patent to be valid, it must be: (1) new, (2) original, (3) ornamental, (4) non-obvious to a person of ordinary skill in the art, and (5) not primarily for the purpose of serving a functional or utilitarian purpose. Payne Metal Enterprises, Ltd. v. McPhee, 9 Cir., 382 F.2d 541, 543, 546.

The district court prepared and filed an extensive memorandum opinion supporting its order granting summary judgment for defendant. In the final paragraph of that opinion, immediately preceding the decretal provision, the court stated two reasons why the patent is invalid. These reasons are: the design is not ornamental as required by 35 U.S.C. § 171 (1964), and there is no invention in view of the prior art, citing 35 U.S.C. § 103 (1964). It will be noted that these reasons relate to the third and fourth essentials of a design patent listed above.

The memorandum decision, read as a whole, however, indicates that the district court also determined that the patent is invalid for the additional reason that the essential elements of the design are primarily for the purpose of serving a functional or utilitarian purpose—this reason relating to the fifth essential of a design patent, as listed above.[1]

Barofsky advances several reasons why, in his view, the district court erred in holding the design patent invalid on the ground that its salient features were intended to serve a functional purpose.

The first of these is that a design patent is not rendered invalid merely because the article of manufacture which is the subject of the design may, in addition to having a pleasing appearance, also perform a useful function.

This is undoubtedly the law. See Robert W. Brown & Co., Inc. v. De Bell, 9 Cir., 243 F.2d 200, 202–203. But, as we stated in Payne Metal Enterprises, Ltd. v. McPhee, 9 Cir., 382 F.2d 541, 546, the rule is otherwise if the primary purpose of the design is functional. The configuration and appearance of many articles of manufacture, though dictated by functional requirements, are often pleasing to look at. However, if the resulting configuration proceeds primarily from the necessity of functional or mechanical requirements, it is not a valid design patent. See Bentley v. Sunset House Distrib. Corp., 9 Cir., 359 F.2d 140, 145; Bliss v. Gotham Indus., Inc., 9 Cir., 316 F.2d 848, 851.

The court, as shown in note 1 determined that the primary purpose of the Barofsky design is functional. Whether

---

1. Thus the district court stated in its memorandum opinion that: the dimensions and general appearance in elevation of the doors were determined by the shape of the face of the central cabinet, and are therefore "primarily functional"; the pull knobs on the doors were for the "functional purpose" of opening and closing the doors; the doors were relatively thick "for the functional purpose of housing loudspeaker" components; the hinging of the doors on the sides of the cabinet was for the "functional purpose" of permitting movement of the doors relative to the central cabinet; the vertical bevels on the outer side at the end of the doors serve the "functional purpose" of permitting each of the doors to be moved to a fully opened position; all of the appearance features of the cabinet "are dictated primarily by functional or mechanical requirements"; if there are any ornamental or so-called pleasing effects of the design of the cabinet, "they are merely a by-product of said functional or mechanical requirements"; "the design appears to derive principally from a functional rather than a design objective"; and the design "merely hinges two conventionally shaped separate speaker units to a central cabinet so that the speakers may also serve as doors."

that is a correct determination and, in any event, whether such a determination could properly be made on a motion for summary judgment, are matters which will be inquired into at a later point in this opinion.

Barofsky argues, in effect, that even if some individual features of his design are primarily designed to serve a functional purpose, this is immaterial if the design, considered as a whole, is not functional. To predicate this functional test upon a consideration only of the individual features of the design, Barofsky contends, is "to break the fagot stick by stick," a process which Justice Holmes condemned in connection with a copyright infringement question. See Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 29, 39 S.Ct. 401, 63 L. Ed. 822.

The basic question here is whether the complete design for which a patent has been obtained primarily serves a utilitarian purpose. Consideration of that question necessarily involves an analysis of the design as a whole. The only way to make such an analysis is to note the individual features and functions of the design, evaluate their relative importance, and observe how they each contribute to the over-all conception for which the patent has been issued. See *Bentley*, supra, 359 F.2d at 146.

█ Proceeding in this manner, it would not be proper to invalidate a design because one or more minor features primarily serve a utilitarian purpose. But invalidation is indicated if the individual features which are found to serve, primarily, a functional purpose may fairly be labeled as dominant, in the sense that they are chiefly relied upon as contributing to the over-all design the qualities of newness, originality, ornamentation and non-obviousness.

This principle is demonstrated by our decision in Payne Metal Enterprises, Ltd. v. McPhee, referred to above, involving the design for a liquor pourer. In determining whether the design was non-obvious, the trial court gave primary consideration to two features of the design, a "pinched-in" waistline at the point at which the so-called "skirt" joins the body of the apparatus, and the fact that the "skirt" flows freely away from the body. The trial court held that both of these features were non-obvious and that the patent was not invalid on any other ground. Reversing, we held that the skirt feature was obvious, and that the pinched-in waistline was dictated primarily by functional requirements.[2]

Barofsky argues that the district court erred in holding that each of the dominant features of the patent are primarily functional.

The dominant features of his patent are, as stated above, related to the doors which are hinged to the sides of the cabinet. Chief among these features are the length, width and depth of the doors, the use of a sound-permeable fabric on both sides of the doors, the presence of bevels along the outer vertical edges of the doors, and the fact that the doors are so hinged that they may be opened away from the face of the cabinet, or closed in front of it.

█ We are convinced, as was the district court, that all of these features primarily serve a functional purpose.

Since it was intended that the doors, when closed, would cover the face of the cabinet, and since Barofsky claimed no novelty for his design of the central cabinet, including its dimensions, the length and width of the doors are purely functional. The depth of the doors is also primarily functional, since they were intended to house loudspeaker components.[3] Since the doors primarily

---

2. We also held that the pinched-in waistline was obvious.

3. The patent as finally issued makes no disclosure that its box-like doors are speaker housings. Barofsky also testi-

fied that his design, conceived in 1953, was directed entirely to appearances and not to any mechanical features; that the dimensions were selected on the basis of what he thought looked good, and that, at the time his design was conceived,

serve the functional purpose of speaker housings, the sound-permeable grille cloth shown on both sides of the doors likewise primarily serves that purpose. The patent drawings show nothing distinct or unusual about these cloth coverings, either as to texture or design, but show this feature only by close and plain cross-hatching. Thus if the plain grille cloth contributes an ornamental quality to the design as a whole, it is but a by-product of the functional purpose which the cloth serves.

The presence of bevels along the outer vertical edges of the doors, as the district court correctly determined, serve the primary purpose of permitting the doors to be opened to an acute angle. This determination is corroborated by one of the patent drawings, which shows one of the doors opened to such an angle, it being plainly indicated that this is made possible by the bevel. Assuming that the use of the bevel also has some quality of ornamentation, it is, again, but a by-product. See Bliss v. Gotham Industries, Inc., 9 Cir., 316 F.2d 848, 851. The fact that the doors are so hinged that they may be opened away from the cabinet, or closed in front of it, is also indicative only of a utilitarian purpose.

It may be that, considered in the aggregate, Barofsky's conception could have formed the basis of a mechanical patent, although there would still be the factors of newness, originality and non-obviousness to consider. But, because the dominant features of the design, and therefore the design as a whole, are primarily functional, this is not a valid design patent.

Finally, with respect to the functional aspect of the patent, Barofsky contends that there are genuine issues of material fact which ought not to have been resolved on a motion for summary judgment.

In support of his view that the design in question does not proceed primarily from functional requirements, Barofsky introduced his own deposition, the affidavit of an industrial designer, and the promotional brochures of General Electric and several other companies. Each of these exhibits was intended to emphasize the symmetrical and aesthetic appearance of the over-all Barofsky design. While Barofsky testified, in substance, that he had an ornamental objective in mind with respect to each of the features of the design, he does not deny that each of the features also serves a

manufacturers had not developed speakers which would fit in the relatively thin housing of the Barofsky doors. Moreover, it was not until after the advent of home stereo, beginning about 1957, that there was a functional need for speaker housings in the doors of radio cabinets.

However, it is established in the record, without contradiction, that Barofsky's original drawings included dotted lines in a circular pattern showing through the grille cloth of the swinging doors and that he stated, in his initial specifications, that these lines indicated "circular speaker disclosures within the doors," which were "disclosed for the purposes of illustration only." In addition, the title of the invention was originally stated as "A Housing for the Sound Portions of a Television Cabinet or Similar Article."

Barofsky states in his reply brief in this court that the only reason the patent, as finally issued, does not disclose that its doors are intended as speaker housings is because he applied for his patent without legal assistance and simply did what the Patent Examiner told him to do. As Barofsky tells us in that brief, an examination of the file wrapper will reveal that the dotted lines indicating speakers, and the reference to speakers in the title were omitted only because the Examiner told him this was necessary in order to obtain the design patent. In view of these circumstances, Barofsky argues:

"[I]t would be a travesty of justice and a mockery of the United States Patent System, to hold that [the Barofsky] patent must be considered limited to a television cabinet with doors which are not speaker housings. If anyone has any question what the patent is intended to cover, he has only to look at the Patent Office prosecution file to find out that it was a design for a cabinet with movable housings for speakers which housings could serve as closures when the electronic unit was not in use."

functional purpose. Likewise, the remaining exhibits do not refute the functional purposes attributable to the dominant features of the design as disclosed by the patent drawing.

Having in view the indisputable mechanical facts concerning the functioning of the doors in question, as described above, we think the district court was entitled to conclude that, as to the dominant features of the design, there is no genuine issue of fact precluding a determination, on summary judgment, that they primarily serve a utilitarian function.

Accordingly, without the need of discussing the other grounds upon which the district court rested its decision, we conclude that the court did not err in determining that Design Patent No. D–176,492 is invalid. The court did not err in failing to determine whether the patent had been infringed.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. Summary judgment may be rendered, upon motion, only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Consolidated Elec. Co. v. United States, 355 F.2d 437 (9th Cir. 1966). I cannot agree that the drastic remedy applied by the District Court was proper under any of the theories presented.

The crucial issue relied upon by the majority concerns whether the appellant's design was dictated *primarily* by functional considerations. See Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541 (9th Cir. 1967); Robert W. Brown & Co., Inc. v. De Bell, 243 F.2d 200 (9th Cir. 1957). As to this question, I am convinced that a genuine issue of fact existed. The District Court concluded that a number of specific elements of the design, such as the bevels on the

doors of the cabinet, were each present in the design for a "functional purpose." The majority writes that whether the design was primarily dictated by functional considerations "necessarily involves an analysis of the design as a whole. The only way to make such an analysis is to note the individual features and functions of the design, evaluate their relative importance, and observe how they each contribute to the overall conception for which the patent has been issued." Basically, these inquiries are factual, and the evidentiary materials before the court in response to the motion created an issue which should have been resolved in plenary proceedings.

It should also be observed that the District Court did not specifically rely upon the same theory as that upon which the majority rests its decision. Finally, I think it significant that none of the cases cited by the majority as to this issue, nor any other case that I have been able to find, has involved, or has even considered, summary action based upon that principle.

I would reverse.