**NEO–ART, INC., a corporation, and Gabor Kadar, Plaintiffs,**

v.

**HAWKEYE DISTILLED PRODUCTS CO., Twentieth Century-Fox Film Corp., Simon Levi Co., et al., Defendants.**

**Civ. A. No. CV82–5291–JSL.**

United States District Court,
C.D. California.

Feb. 4, 1987.

John E. Kelly, Pastoriza, Kelly & Lowry, Woodland Hills, Cal., for plaintiffs.

Francis A. Utecht, Fulwider Patton Rieber Lee & Utecht, Los Angeles, Cal., for defendants Mike Wayne Distilled Products, d/b/a Hawkeye Distilled Products, Roman Ceramics Corp., HAROCO, Inc. and Harold Roman.

Mary Hulett, Daniels, Baratta & Fine, Los Angeles, Cal., for defendant Simon Levi Co.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

LETTS, District Judge.

This is one of three cases involving design patents this Court decided on preliminary motions over a short time span. The other cases are *Whittar Industries Ltd. v. Superior Industries International*[1] and *Pioneer Photo Albums, Inc., v. The Holson Company.*[2] Each of these cases involves the same controlling precedents, and each party contends that proper application of these precedents to the facts of its particular case requires a decision in its favor.

Taken together, these three cases on design patents demonstrate the importance of distinguishing between a "design for an article of manufacture," where the *design of the article itself* produces an aesthetically distinctive overall visual impression in a novel and non-obvious way, and a design which (a) produces only the visual effect which is the self-evident result of combining functionally obvious design elements, or (b) produces aesthetically distinctive visual effects only through the addition of graphics or other ornamental elements which are *not* part of the actual "design for an article of manufacture."

The instant case involves alleged infringement of United States Design Patent 260,432 (hereafter the "patent") issued in 1981 to plaintiffs Neo-Art, Inc. (hereafter "Neo-Art") and Gabor Kadar. The defendants are Hawkeye Distilled Products Co., 20th Century Fox Film Corp., and Harold Roman.[3] The device at issue is a dispenser of alcoholic beverages. Jurisdiction is based on 28 U.S.C. section 1338(a) (1982).

Neo-Art seeks money damages, an accounting of profits, attorneys' fees and costs. Hawkeye denies any infringement of the patent, and counterclaims for a judgment that the patent is invalid. As one ground for its claim of invalidity, Hawkeye asserts that the patent was procured by fraud on the patent office, but this issue will not be addressed because the patent is invalid for other reasons. Hawkeye also has made a claim for attorney fees, which is denied.

The Court holds that the patent is invalid because it produces a visual impression which is no more than the aesthetically self-evident result of combining functionally obvious design elements. In this respect, it is like *Pioneer* and unlike *Whittar*. The Court hereby sets forth its findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Both Neo-Art and Hawkeye manufacture and market a product which dispenses alcoholic beverages from a combination of a bottle and stand etc., each of which is deliberately designed to resemble a medical intravenous fluid dispenser ("IV Unit"). Each party's design is intended to and does create that association and visual impression in the eye and mind of the purchaser. Neo-Art markets its product under the brand name "Hospital Booze." Hawkeye markets its product pursuant to a license from 20th Century Fox Television under the brand name "M*A*S*H." While the Hawkeye product is designed so that it is visually distinguishable from the patented design, on close examination the appearance of both products is necessarily dominated by the ready identification with a medical IV Unit. Thus, there seems to be little doubt that if the Neo-Art patent were valid, the Hawkeye design would infringe it. *See infra*, at 93–94.

 The patentability of designs is governed by 35 U.S.C. section 171, which provides:

Whoever invents any new, original and ornamental design for an article of man-

---

1. 230 U.S.P.Q. 48 (1986) [Available on WESTLAW, DCTU database].

2. 654 f.s. 87 (C.D.Cal., 1987).

3. Because in its present posture, this action raises no issues peculiar to any individual plaintiff or defendant, references to Neo-Art will include both plaintiffs and references to Hawkeye will include all defendants.

ufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

In numerous decisions, the Supreme Court has explained that it is the appearance of the article which is protected by and crucial to a design patent. *Gorham Co. v. White,* 81 U.S. [14 Wall.] 511, 524–25, 20 L.Ed. 731 (1871); See also, *Robert W. Brown & Co. v. DeBell,* 243 F.2d 200, 202 (9th Cir.1957). To be patentable, a design must be primarily ornamental and not primarily functional. A design dictated by functional consideration is not *primarily* ornamental, and therefore is not patentable. *Barofsky v. General Electric Corporation,* 396 F.2d 340, 342 (9th Cir.1968) *cert.* denied 393 U.S. 1031, 89 S.Ct. 644, 21 L.Ed.2d 575 (1969). See also, *Payne Metal Enterprises, Ltd, v. McPhee,* 382 F.2d 541, 546 (9th Cir.1967); *Bliss v. Gotham Ind., Inc.,* 316 F.2d 848, 851 (9th Cir.1963).[4]

Initially, what is confusing about this case is that the potential design, although functionally obvious, is not functionally efficient. The *only* reason for designing the "article of manufacture" in this functionally inefficient manner is to produce a commercially valuable product appearance. Arguably then, it follows that if the entire commercial value of the product results from the design appearance, which is markedly unlike anything in prior use, the design is "new, original and ornamental" as required by section 171 and the protection of a design patent should be available under that section.

In the instant case this reasoning, while plausible, will not withstand close analysis. The visual resemblance between plaintiff's product design and the well-known medical IV Unit design which is in the public domain, was not achieved by combining en-

tirely different design elements to achieve the same visual effect in a new or novel way. On the contrary, the visual similarity between the Neo-Art design and that of a medical IV Unit is achieved by combining the very same elements—a standard IV bottle, stopper, drip chamber, plastic tubing and clamp—with an upright suspension stand. The *only* element of plaintiff's design which is dissimilar from a standard IV Unit, is the different and shorter fixed stand, which is not on floor rollers as a typical IV Unit would be. This different stand configuration serves the purely functional purpose of accommodating the intended use on or around bar counters, rather than as a mobile hospital unit.

To produce visual similarity between one product and another simply by combining the same elements in the same way, save only for functional modifications, in the view of this Court is neither "new" nor "original" as those terms are used in Section 171. In fact, the "article of manufacture," which Neo-Art claims is a new and original design, is so nearly identical to the article for which it was intentionally designed to resemble, that it seems more accurate to describe Neo-Art's commercial contribution as finding a new use for an old product rather than designing a new product. Therefore, the Court holds the patent invalid because it does not meet the express terms of Section 171.

In addition, Section 171 also incorporates other provisions of patent law governing inventions. The standards for invention set forth in 35 U.S.C. Section 103 have been held by numerous decisions to be embraced within Section 171. *See e.g., A & H Mfg. Co., Inc. v. Contempo Card Co., Inc.,* 576 F.Supp. 894, 899 (D.R.I.1983). Section 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the

4. *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234 (Fed.Cir., 1986) where a "showing that

[a design] is primarily functional is sufficient to preclude the grant of a preliminary injunction."

subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The Supreme Court set forth the test for determining whether an invention would be "obvious ... to a person having ordinary skill in the art ...," as required by Section 103 in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 545 (1966), a case on which both parties rely regarding infringement. This test requires an analysis of the obviousness issue, a consideration of the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art at the time the invention was made.[5] The test is often difficult to apply with reference to new product designs, but it is not difficult here. To do so, it is necessary only to distinguish Neo-Art's commercial *idea* from the manner in which that idea was reduced to commercial practice.

It is obvious that the idea for dispensing an alcoholic beverage from a container which looks like an IV Unit was a solid commercial idea. Both parties achieved considerable commercial success by reducing this idea to a salable product; however, this is entirely beside the point at issue in this case. It is this idea, rather than the manner in which it was reduced to practice, that is responsible for the commercial success of both plaintiff's and defendant's products. Therefore, while commercial success is often deemed to be an indication of the non-obvious aspect of a design, it is not so here.

It is axiomatic that the patent laws do not give monopoly protection over ideas themselves, no matter how novel or commercial those ideas might be.[6] It is the reduction of an idea to commercial practice in a novel and non-obvious way which is entitled to patent protection.[7]

In this case, the product idea for making an alcoholic beverage dispenser which resembles an IV Unit was novel, but that idea, in and of itself, was not patentable. The question presented is whether the idea which Neo-Art reduced to commercial practice is entitled to design patent protection. This court holds that it is not. When one looks at the manner in which Neo-Art's commercial idea was reduced to practice, in light of the prior art, it is hard to imagine a more obvious design.

The elements of the medical IV Unit were originally combined as they were for purely functional reasons. The visual effect which resulted was the self-evident result of combining the functional design elements in a functionally efficient manner. The Neo-Art design produces the same visual effect in the most obvious possible way. It combines the same design elements in the same way, save only for the functionally necessary change in the design of the stand to accommodate a bar counter rather than a hospital floor. Indeed, the Neo-Art design is so obvious and indistinguishable from the pre-existing design of the IV Unit that it is at least as fair to describe Neo-Art's commercial contribution as that of conceiving the idea of producing an IV Unit for use as a liquor dispenser as that of producing a liquor dispenser which looks like an IV bottle.

The Court here contrasts *Neo-Art* with the design in *Whittar* (a steering wheel made of a rim, hub, and spokes) which survived a challenge of invalidity on Motion

---

**5.** 383 U.S. at 17, 86 S.Ct. at 693.

**6.** See *Burr v. Duree,* 68 U.S. (1 Wall) 531, 570, 17 L.Ed. 650 (1864) (Grier, J.) (which states that there is no authority to grant a patent for a principle or for an idea or any other mere abstraction); see also *Detmold v. Reeves,* 7 Fed Cases 547 (No. 3831) (Circuit Ct. of Penn.) (1851). See also R. Wincor, Copyright Patents and Trademarks, p. 46 (1980).

**7.** *See* Wincor p. 46.

for Summary Judgment. In *Whittar,* the design elements were all functional; they were individually designed and combined in an aesthetically non-obvious way which was not solely the result of combining the functional design elements in a functionally efficient way. And it is only *that* design which is new or original that is entitled to protection under section 171.

Finally, it is instructive to assess the validity of the Neo-Art design by reference to the standard for infringement of design patents. Infringement of a design patent rests literally in the "eye of the beholder:"

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham,* 81 U.S. at 528.

As previously noted herein, the commercial value of the Neo-Art design depended entirely on the visual association with a medical IV Unit. If the Hawkeye design would infringe the Neo-Art design, it seems inescapable that any other design which would attempt to take advantage of the same visual association would also infringe. If, on the other hand, the Hawkeye design were held to be non-infringing, it is hard to imagine a design which would infringe, other than an identical copy. In that case the patent would be virtually meaningless, except as it might represent an apparent, but bogus threat to legitimate competition.

The Court is aware of no case, and Neo-Art has cited none, in which a court has held that simply designing one product to look like another, the design for which has long been in the public domain, entitles the designer to patent protection. To so hold in this case, where the visual effect is achieved in the most obvious possible way, would be in effect to patent the *idea* rather than the design. Since this is not a result

contemplated by the patent laws, the patent must be held invalid.

IT IS SO ORDERED.